## CONCHO SAND & GRAVEL CO. v. THOMSON.

No. 27291. June 29, 1937.

Rehearing Denied Nov. 23, 1937.

Albert D. Lynn, for plaintiff in error.

Fred M. Hammer and Major J. Parmenter, for defendant in error.

BAYLESS, V. C. J. J. J. Thomson sued Concho Sand & Gravel Company, a corporation, in the court of common pleas in Oklahoma county, to recover damages for the breach of a contract to furnish gravel at a specified price. The company denied liability and cross-petitioned for the balance due on an account. Plaintiff admitted liability on the account and asked that it be credited upon any judgment he might obtain. The cause was tried to the court without jury. Judgment was rendered for plaintiff for the amount he sought, less the account, in the sum of $1,119.23, and the company appeals.

The facts are summarily stated herewith, with the conflicting evidence indicated. The Oklahoma Highway Commission advertised for bids for a certain project which required some grading, the installation of some concrete facilities, and the graveling of several miles of roadway. The specifications for all materials were well known to both parties. Plaintiff desired to bid and asked defendant for quotations of prices of the various materials, and received quotations. Plaintiff bid, and eventually was awarded the contract. Plaintiff says that when he informed the commission who was to furnish him his materials, including gravel, he was informed the defendant's gravel would not meet the specifications. Plaintiff says he communicated this to defendant, and one of defendant's agents assured him that the gravel would meet specifications and be accepted or they would "sweeten" it a little, meaning by this they would combine other stone with this gravel and make a mixture to pass tests. Plaintiff says this agent conferred with the commission the day the bids were let and then made this representation and that he relied upon it and they confirmed it

by letter. The letter is simply a quotation and reads:

"We quote f. o. b. Orlando, Oklahoma, as follows: Road Gravel $1.50 per ton. Limestone Screenings $1.35 per ton."

Defendant denies the effect of this testimony by proving that it informed plaintiff the first time he consulted it that its gravel would not meet tests, and that it was strictly up to him to get the commission to approve and accept a mixture. Defendant admits its gravel could not meet the tests, and both parties testify that the commission refused to approve the mixture. The refusal to accept the gravel either alone or in a mixture, and the efforts of plaintiff to get acceptable gravel, caused considerable delay, at an admitted additional cost, and plaintiff testified that the gravel procured cost 35c per ton more than the contracted price.

The defendant briefs two propositions, to wit: That its acts constituted merely a quotation of prices and not an offer to sell, but. if the acts are determined to be an offer to sell, that it was an offer to sell the mixture only, and since the mixture was rejected, it is not liable. The plaintiff attempts to answer these by dividing its argument into four divisions.

The plaintiff bases two of his divisions upon a phase of the action which he asserts arises out of the admissions of defendant's attorney at the time of the trial. Plaintiff says (1) defendant is estopped to assert that there was no contract because by the admissions of its attorney there was an agreement to furnish something usable, and the controversy related to what was to be furnished; and (2) there is sufficient evidence to support the finding and judgment that a binding contract had been entered into.

We are of the opinion that the admissions had the effect of restricting the issues greatly. These admissions read:

"Mr. Lynn: May it please the court, the facts as stated, there will not be a great deal of conflict in it. There is one thing in this case, and that is: What was the agreement? Our defense simply goes to the proposition that we did not agree nor promise to furnish the specification material in this case. We admit the material we quoted our prices on

was turned down, so there will be no conflict over that. It was turned down and did not meet the specification. * * *

"We did not agree, or lead him to believe, that this mixture would meet 55.02; we simply said we could furnish it if he could use it."

The defendant had gravel, but both parties had reason to believe it would not pass test. The plaintiff says that defendant told him "the gravel would be accepted, and if it was too fine, that he would ship in material and "sweeten it." The gravel was rejected, and it was rejected after it was sweetened. The issue then is: Did defendant agree to furnish a gravel, sweetened or unsweetened, that would pass? The issue is one of fact to be determined from the language of the parties.

We do not think so. Both parties knew that the final approval or rejection lay with the State Highway Commission. The most that can be implied from defendant's offer is that it would furnish gravel, probably unsatisfactory, at $1.50 per ton and limestone screenings, with which to "sweeten it," at $1.35 per ton. We do not believe that the language used by the parties can be so stretched as to imply that defendant bound itself to furnish material which would meet the state's specifications in any event. From the record it appears it had an abundant supply of gravel and limestone screenings. It did not refuse to furnish these to plaintiff, but on the contrary plaintiff could not afford to accept delivery thereof because he could not use them. Neither party should be, found guilty of the absurd conduct of binding themselves to control the state's discretion in relation to the tests this material had to undergo. The defendant's fault is not in failing to furnish the specified material. Its fault. if any, would be in representing to plaintiff it would furnish him a "sweetened" gravel which would pass tests. We cannot find from this record it did this.

The judgment in favor of the plaintiff is reversed, and the judgment in favor of the defendant is affirmed.

OSBORN, C. J., and CORN, GIBSON, and HURST, JJ., concur.